IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TERESA M. RODRIGUEZ, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 13 C 5683 |
| ) | |
| CAROLYN W. COLVIN, ) | Judge Virginia M. Kendall |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Teresa M. Rodriguez seeks review of the Social Security Administration's decision denying her disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381a. An Administrative Law Judge ("ALJ") determined that Rodriguez, while suffering from severe impairments, is not disabled under federal law. The Social Security Appeals Council declined to review the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner of Social Security. Rodriguez now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). The parties have filed cross-motions for summary judgment. For the following reasons, the Court grants Rodriguez's motion, denies the Commissioner's motion, and remands this case for further proceedings consistent with this opinion.

## BACKGROUND

Rodriguez applied for disability insurance benefits and supplemental security income benefits on April 6, 2010, alleging disability beginning on April 20, 2009. (R. 143-155). Her claims were denied both initially and upon reconsideration. (R. 66-74, 79-86). Rodriguez continued pursuit of her claims and an ALJ convened a hearing on October 17, 2011, at which Rodriguez, represented by counsel, appeared and testified. Additionally, Edward Pagella testified as a vocational expert. (R. 42-65). On February 23, 2012, the ALJ issued a decision finding that Rodriguez was not disabled because she could perform sedentary work that did not involve concentrated exposure to lung irritants and work place hazards such as heights and moving machinery or more than occasional climbing, balancing, stooping, crouching, kneeling and crawling. (R. 33). The ALJ also found that Rodriguez required a "sit and stand" option of sitting 45 minutes and standing one to two minutes; could use her nondominant left upper extremity frequently for all functions; and could use a cane as needed for walking. (*Id.*). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Rodriguez's request for review on June 5, 2013. (R. 4-6). Rodriguez now appeals that decision.

**A. Medical History**

Rodriguez was born on April 3, 1964 and lives in Des Plaines, Illinois with a friend. (R. 46, 66). She is unmarried and has one son who also lives with her. (R. 46). She suffers from obesity, left carpal tunnel syndrome, a history of respiratory issues, and left back, neck, and arm pain. (R. 31).

Rodriguez first sought treatment for her back and left side issues in April 2009 after she fell while bike riding. (R. 381). On April 22, 2009, Rodriguez complained of numbness, tingling, and pain in her left upper and lower extremities. (R. 403). The treating physician noted a history

2

of carpel tunnel syndrome. (*Id.*). An April 23, 2009 X-ray revealed moderate degenerative disk disease at the C5/6 joint of Rodriguez's spine. (R. 422). On April 28, 2009, doctors noted that Rodriguez had decreased sensation in her left arm and leg diffusely. (R. 385). Doctors saw Rodriguez again on May 6, 2009 for continued complaints of left arm and hand numbness and tingling. (R. 398). Rodriguez appeared weaker on her left side. (R. 399). Dr. Laura Ozark believed Rodriguez was suffering from cervical radiculopathy leading to four emergency room visits. (*Id.*). The doctors recommended an MRI be administered but Rodriguez decided against it because she is claustrophobic; instead, she requested a referral to an open MRI facility. (*Id.*).

Rodriguez received an MRI on May 15, 2009, demonstrating mild bilateral facet degenerative hypertrophy, mild bilateral foraminal stenosis, and mild to moderate central stenosis at C5/6. (R. 421). The MRI also showed mild central stenosis and posterior disk osteophyte complex with superimposed small central disk herniation at C6/7. (*Id.*). Rodriguez was diagnosed with degenerative cervical disk disease at C5/6 and cervical radiculopathy on June 16, 2009. (R. 383). On June 22, 2009, a physical examination indicated grossly decreased sensation throughout the entire left arm. (R. 384). On October 5, 2009, Rodriguez complained of neck pain, back pain, and left arm numbness. (R. 381). An examination led to a finding of diminished sensation of the left hand to light touch but normal muscle strength. (R. 381-82). The overall impression was cervical spondylosis. (R. 382). Rodriguez visited clinics and doctors for continued back and left side pain in December 2009 and February 2010. (R. 388-89). In April 2010, Rodriguez returned with a repeat complaint of four to six weeks of numbness on her left side. (R. 385). A CT scan was recommended, but Rodriguez declined due to "heart issues." (*Id.*).

Rodriguez was involved in a car accident on May 31, 2010. (R. 522). In June 2010, she was diagnosed with cervical spinal stenosis, cervical radiculopathy, muscle spasm, and

hypertension. (R. 445). A consultative exam administered by Dr. Dean Velis on July 13, 2010 led to findings of full range of motion in all joints, no difficulty ambulating, and 4/5 finger grasp and hand grip in the left hand. (R. 450). Dr. Velis noted that Rodriguez likely suffered from myofascial pain syndrome, cervical syndrome with radiculopathy, positive L'hermitte's sign, and paraesthesias and paresis in the left upper extremity. (R. 451). Rodriguez initiated physical therapy on September 27, 2010. (R. 514).

November 2010 X-rays demonstrated mild L5-S1 degenerative disk narrowing, facet arthritis, and mild to moderate degenerative changes at C5/6. (R. 580-81). A December 2010 MRI showed mild to moderate biforaminal narrowing at C5/6 and very small central disk protrusion at C6/7. (R. 583). In January 2011, Dr. Samantha Starrett examined Rodriguez and agreed with Rodriguez's self-assessments of her physical abilities. (R. 606). Dr. Starrett found that Rodriguez had numbness and weakness in her left arm and that the pain limited her ability to perform daily functions. (*Id.*). Rodriguez scheduled physical therapy sessions in January and February 2011. (R. 569).

### B. Employment History

Rodriguez received her high school diploma and completed some college coursework. (R. 296). Her work history is primarily administrative in nature. From 1989 to 1994, Rodriguez was an internal audit clerk. From 1994 to 2007, she was a secretary, contract administrator, or billing clerk at a number of entities. (R. 294). At the hearing, Rodriguez testified that she had not worked since April 20, 2009. (R. 46).

### C. Disability Claim and Hearing Testimony

Rodriguez applied for disability insurance benefits and supplemental security income benefits on April 6, 2010, alleging disability beginning on April 20, 2009. (R. 143-155). The

Social Security Administration denied her claims on July 22, 2010 and denied her request for reconsideration on November 19, 2010. (R. 66-74, 79-86). Rodriguez requested review by an ALJ and a hearing was held on October 17, 2011, at which Rodriguez, represented by counsel, appeared and testified. Edward Pagella testified as a vocational expert. (R. 42-65).

### 1. Rodriguez's Limitations and Activities

Rodriguez testified that she has numbness from her first three fingertips that turns into shooting pain in her upper left arm, shoulder, and arm pit. (R. 47). She further stated that she started physical therapy in 2009 but was unable to continue because her car was repossessed; but regardless, the pain in her neck became so severe that she would not have been able to drive the distance anyway. (R. 47-48). Rodriguez testified that she moved to Des Plaines in order to further her medical care but that she lost her insurance in April 2011. (R. 48). She testified that although the pain in her left arm and shoulder is severe, she has not had surgery. (R. 49).

Rodriguez also testified that she has problems with walking. A crushing pain develops in her lower extremities and she can only stand on her feet for five to ten minutes. (R. 49-50). She can only sit for ten to fifteen minutes without foam padding because she develops a feeling of heaviness on the back of her neck. (R. 50). Rodriguez further testified that she cannot climb stairs and has difficulty bending, stooping, crouching, crawling, and kneeling. (*Id.*). She testified at the hearing in a wheelchair but it was not prescribed by a doctor. (R. 51). Rodriguez can lift a gallon of milk and has difficulty reaching overhead or in front of her body. (*Id.*). She does not shower because it is hard for her to keep her balance. (R. 52). She can make sandwiches but does not cook on the stove. (*Id.*). Rodriguez drives approximately twice per week to pick up her son, but she does not shop for groceries, perform household chores or yard work, or go out for dinner or movies. (R. 53-54). Once per week, Rodriguez goes to the library to use a computer for

5

approximately twenty minutes to check her email account and Facebook. (R. 56). Rodriguez placed foam underneath herself on her wheelchair during the hearing. (R. 57).

### 2. Vocational Expert Testimony

Edward Pagella described Rodriguez's past employment as a billing clerk and central office operator as semiskilled sedentary. (R. 63). Pagella additionally answered a number of hypothetical questions about Rodriguez's ability to obtain employment. Pagella first opined that an individual with Rodriguez's age, education, and work experience who can lift and carry ten pounds occasionally, less than ten pounds frequently, and sit at least six hours during an eight-hour workday with an added limitation of being allowed to stand for a couple minutes after sitting 45 minutes could perform Rodriguez's past relevant work. (*Id.*). He also testified that such an individual could avoid exposure to lung irritants, heights, and moving machinery in Rodriguez's past relevant work. (*Id.*). The ALJ then asked Pagella what work such an individual could do if the individual could use the non-dominant left upper extremity either frequently or occasionally for all functions. Pagella opined that while an individual who could use the non-dominant left upper extremity frequently could perform Rodriguez's past relevant work, an individual who could only do so occasionally would be unable to perform Rodriguez's past relevant work or maintain substantial gainful activity at the sedentary level. (R. 63-64).

## LEGAL STANDARD

A court should uphold the final decision of the Commissioner "if the ALJ applied the correct legal standards and supported her decision with substantial evidence." *Bates v. Colvin*, 736 F.3d 1093, 1097-98 (7th Cir. 2013) (citing 42 U.S.C. § 405(g)). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S.

389, 401 (1971)). A court may not "reweigh the evidence or substitute [its] own judgment for that of the ALJ; if reasonable minds can differ over whether the applicant is disabled, [the court] must uphold the decision under review." *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). However, the ALJ's decision must rest on "adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). The ALJ must "build a logical bridge from the evidence to [her] conclusion, but [she] need not provide a complete written evaluation of every piece of testimony and evidence." *Shideler*, 688 F.3d at 310. If the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review," remand is required. *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (internal quotation marks and citation omitted).

## DISCUSSION

To determine whether a claimant is disabled and thus ineligible for either disability insurance benefits or supplemental security income, an ALJ uses a sequential five-step inquiry. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Kastner*, 697 F.3d at 646. The inquiry asks: (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether she can perform her past relevant work; and (5) whether the claimant is capable of performing any work in the national economy. *Kastner*, 697 F.3d at 646. Here, the ALJ found that Rodriguez had not engaged in substantial gainful activity and had severe impairments of obesity, cervical and lumbar degenerative changes, left carpal tunnel syndrome, and a history of respiratory ailments, thereby satisfying the first two steps. Although the ALJ noted Rodriguez's severe impairments, she determined that the conditions did not meet the requirements for presumptive disability at the

third step and moved on to assess Rodriguez's residual functional capacity ("RFC"). The ALJ determined that Rodriguez could perform sedentary work and her past relevant work at the fourth step of the inquiry. Rodriguez challenges the ALJ's adverse determination at step four, primarily arguing that the ALJ erred (1) in her credibility analysis; (2) by affording Dr. Starrett's opinion no controlling weight; (3) by failing to properly consider a lay witness statement from Rodriguez's roommate; and (4) by failing to substantiate her findings. Because the ALJ failed to adequately support a logical bridge here, the ALJ's decision is vacated and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

**A. The ALJ's Credibility Analysis**

A person can experience disabling pain even though no physical source can be verified by medical experts. *See Sims v. Barnhart*, 442 F.3d 536, 537-38 (7th Cir. 2006). For this very reason, while a lack of objective support from physical examinations is relevant in a credibility determination, an ALJ "may not discount a claimant's credibility just because her claims of pain are unsupported by significant physical and diagnostic examination results." *Pierce v. Colvin*, 739 F.3d 1046, 1049-50 (7th Cir. 2014) (citing SSR 96-7p(4)). The ALJ concluded that Rodriguez's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Rodriguez's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with" the ALJ's RFC assessment. (R. 34). Without further explanation, such language is "meaningless boilerplate because it fails to link the conclusory statements made with objective evidence in the record." *Pepper v. Colvin*, 712 F.3d 351, 367-68 (7th Cir. 2013); *see also Martinez v. Astrue*, 630 F.3d 693, 695 (7th Cir. 2011) (boilerplate fails to specify which of the claimant's statements are not credible). Here, however, the ALJ provided an explanation of the evidence and her reasoning

regarding Rodriguez's credibility subsequent to the boilerplate language, so the maligned phrase is not the problem. The problem is that the ALJ's credibility finding placed inordinate import on some evidence and failed to mention some critical evidence.

The ALJ found that Rodriguez's statements about the intensity and frequency of her symptoms were not credible because they were not supported by her actual medical record. (R. 34). In doing so, she inappropriately relied too heavily on the absence of objective records for Rodriguez's pain complaints "without digging more deeply." *See Pierce*, 739 F.3d at 1050 (citing SSR 96-7p(4)). The ALJ discounted Rodriguez's credibility when she found the record revealed "a lack of continuing treatment and follow through with her diagnosis." (R. 35). But this conclusion was erroneous because Rodriguez offered the ALJ numerous reasons for her lack of regular care. The ALJ knew that Rodriguez's lack of insurance prevented her from seeking consistent medical attention from April 2011 onward. (R. 48). *See Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (inability to afford treatment can provide insight into a claimant's credibility). The record additionally reflects other plausible reasons for Rodriguez's sparse treatment history. She is claustrophobic and therefore frightened to receive a standard MRI, yet the ALJ overlooked the fact that she received an MRI a few weeks after it was originally suggested to her in 2009. (R. 421). Rodriguez's efforts to comply with medical advice and get to the bottom of her symptoms are highly relevant in deciding her credibility and determining whether she is exaggerating her pain symptoms. Rodriguez also testified at the hearing that she had to stop attending physical therapy because the pain in her neck did not allow her to drive to the facility. (R. 48) The ALJ does not explain why this was an invalid explanation. Because the ALJ did not consider explanations for instances where Rodriguez did not keep up with her treatment, remand is appropriate. *See Myles v. Astrue*, 582 F.3d 672, 677 (7th Cir. 2009).

The ALJ also failed to note a number of diagnoses and examination results. Particularly troubling is the ALJ's conclusion that the diagnosis of a herniated disk is not supported by the medical record. (R. 35). MRI results from May 15, 2009 demonstrated small central disk herniation at C6/7. (R. 421). Additionally, the ALJ never discussed Rodriguez's June 16, 2009 diagnosis with degenerative cervical disk disease. (R. 383). Nor did she consider the physical examination conducted on June 22, 2009 that led to a finding of grossly decreased sensation throughout Rodriguez's left arm. (R. 384). Instead, the ALJ focused on a consultative evaluation performed by Dr. Velis in July 2010. The examination demonstrated that Rodriguez had 4/5 finger grasp and handgrip in the left hand, 4/5 motor strength in the left upper extremity, and no difficulty walking around. (R. 35). By fixating on Dr. Velis's examination and ignoring other examinations, the ALJ inappropriately "cherry-picked" certain results over others. *See Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014) (ALJ cannot ignore or discount evidence favorable to a plaintiff's claim); *Bates*, 736 F.3d at 1099 ("An ALJ cannot rely only on the evidence that supports her opinion."). Although an ALJ is not required to mention all the evidence in her opinion, she cannot ignore a line of evidence that suggests a disability. *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010).

The ALJ further erred by discounting Rodriguez's account of her physical limitations and concluding that Rodriguez should be able to work full-time because of her admitted daily activities. The ALJ found that Rodriguez's complaints of limitations and pain were belied by her admitted activities of using a computer and cell phone for social networking, making simple meals, and driving sporadically. (R. 34). These activities hardly equate to an ability to work every day. *See Scrogham v. Colvin*, 765 F.3d 685, 700 (7th Cir. 2014) (the "sporadic performance [of household tasks or work] does not establish that a person is capable of engaging

in substantial gainful activity.") (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (alteration in original)). While an ALJ can properly consider a claimant's daily activities in judging disability, the ALJ must use caution when comparing these activities "with the challenges of daily employment in a competitive environment." *Beardsley*, 758 F.3d at 838; *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) ("minimal daily activities" such as preparing simple meals, weekly grocery shopping, and taking care of family members do not establish that a person does not suffer disabling pain). Here, Rodriguez testified that she can lift a gallon of milk, make sandwiches, drive a car twice per week, and carry clothes to the washer. She cannot vacuum, dust, mop, sweep, shower, or grocery shop. (R. 51-53). These daily activities do not provide a basis for the ALJ to have discounted Rodriguez's credibility regarding her pain and physical limitations. Rodriguez's admitted activities are "simply too thin a reed on which to rest a determination that there is substantial evidence supporting the ALJ's conclusion that [she] could return to full-time work." *Scrogham*, 765 F.3d at 701.

The ALJ's flawed credibility assessment requires remand "unless the claimant's testimony is incredible on its face or the ALJ explains that the decision did not depend on the credibility finding." *Pierce*, 739 F.3d at 1051. Here, neither Rodriguez's account of her pain was so contradicted by the medical evidence as to be incredible nor did the ALJ state that her decision did not rely upon her credibility finding. Accordingly, this case is remanded.

**B. The ALJ's Assessment of Dr. Starrett's Opinion**

The ALJ's decision was flawed for reasons other than her improper credibility analysis. Dr. Starrett examined Rodriguez in January 2011. She agreed with Rodriguez's assessments of her own ability "as verified by [Dr. Starrett's] exam." (R. 606). The ALJ gave Dr. Starrett's opinion no controlling weight, concluding that Dr. Starrett "relied on the claimant's opinion for

11

the residual functional capacity." (R. 35). While the ALJ glossed over the fact that Dr. Starrett conducted an examination of Rodriguez in forming her opinion, the problem is not that the ALJ gave Dr. Starrett's opinion no controlling weight, but that she did not state what weight, if any, the opinion was given. "Even when an ALJ decides not to give controlling weight to a treating physician's opinion, the ALJ is not permitted to simply discard it." *Scrogham*, 765 F.3d at 697. Social security regulation requires the ALJ to consider a number of factors when deciding how much weight to give the opinion: "(1) the [l]ength of the treatment relationship and the frequency of examination, because the longer a treating physician has seen a claimant, and particularly if the treating physician has seen the claimant long enough to have obtained a longitudinal picture of the impairment, the more weight [her] opinion deserves; (2) the [n]ature and extent of the treatment relationship; (3) [s]upportability, i.e., whether a physician's opinion is supported by relevant evidence, such as medical signs and laboratory findings; (4) consistency with the record as a whole; and (5) whether the treating physician was a specialist in the relevant area." *Id.* (internal quotation marks omitted); 20 C.F.R. § 404.1527(c)(2-5).

Here, the ALJ summarily dismissed Dr. Starrett's opinion in one sentence, making it impossible for this Court to assess whether she appropriately chose not to give controlling weight to the opinion. The ALJ should have addressed the five factors listed above to enable this Court to review whether she engaged in the correct methodology. *See Scrogham*, 765 F.3d at 698; *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (explaining that when an ALJ denies a treating physician's opinion controlling weight, she determines how much weight to afford the opinion based on the section 1527(c) factors)); *Hofstein v. Barnhart*, 439 F.3d 375, 377 (7th Cir. 2006) (noting that the section 1527(c) factors are "designed to help the administrative law judge decide

12

how much weight to give the treating physician's evidence"). Because the ALJ failed to discuss any of the factors in her opinion, this case is remanded.

### C. The ALJ's Issuance of No Weight to Lay Opinion

The ALJ's misinterpretation of SSR 06-3p and her resultant failure to even consider Rodriguez's roommate's lay opinion of Rodriguez's impairments is another reason for remand. The ALJ gave the lay witness statement no weight "as it is not a treating source and naturally biased as he has a possible interest in the outcome." (R. 36). This reasoning was in error. Social security regulation states that "[i]n addition to evidence from the acceptable medical sources … [ALJs] may also use evidence from other sources to show the severity of [a claimant's] impairment(s) and how it affects [a claimant's] ability to work. Other sources include … non-medical sources (for example, spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, and clergy)." 20 C.F.R. § 404.1513(d)(4). The Social Security Administration therefore expressly considers such non-medical, potentially biased opinions. The ALJ's decision to dismiss the lay opinion here for only those reasons was error.

### D. The ALJ's RFC Determination

An RFC represents the maximum a claimant can perform on a "regular and continuing basis" despite her limitations. *See, e.g., Corniels v. Colvin*, No. 11 C 4267, 2014 WL 5420132, at *5 (N.D. Ill. Oct. 24, 2014) (citing Social Security Ruling 96-8p, 61 Fed. Reg. 34,474, 34,475 (July 2, 1996). "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, 'even [limitations] that are not severe, and may not dismiss a line of evidence contrary to the ruling.' " *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014). For the reasons stated above, this Court concludes that the ALJ did not build the necessary logical bridge from the evidence considered to her ultimate conclusion that Rodriguez could perform both

sedentary and her past relevant work. The ALJ's flawed reasoning cannot be deemed harmless. Rodriguez's remaining arguments need not be addressed, but on remand the determination of RFC and the hypotheticals posed to the vocational expert must be updated after a new evaluation of Rodriguez's credibility regarding her disabling pain. *See Pierce*, 739 F.3d at 1051.

## CONCLUSION

For the foregoing reasons, the Court grants Rodriguez's motion and denies the Commissioner's motion. The judgment is vacated and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 1/29/2015